

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JANE DOE,                          )
as Mother and Next Friend of       )
John Doe, a minor,                 )
                                   )
        Plaintiff,                 )
                                   )
    vs.                            )          Case No.  5:22-cv-00835-HNJ
                                   )
ROBYE PATTERSON, et al.,           )
                                   )
        Defendants.                )

## <u>MEMORANDUM OPINION AND ORDER</u>

On June 6, 2022, Plaintiff initiated this action in the Circuit Court of Limestone

County, Alabama, under the pseudonym Jane Doe, acting as mother and next friend of

her son, John Doe, a minor, and asserting claims against Defendants Robye Patterson,

in her individual capacity, and the Limestone County Board of Education (the Board).

(Doc. 1-1, at 3-8).  Jane Doe filed a First Amended Complaint in the state court on June

8, 2022 (Doc. 1-1, at 20-29),[1] and Defendants removed the case to this court on July 6,

---

[1] The Complaint and First Amended Complaint both assert claims against fictitious defendants. However, the federal courts do not allow claims against fictitious defendants, except under limited circumstances where the plaintiff sufficiently describes the defendant to allow for service of process. *See Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)) ("'As a general matter, fictitious-party pleading is not permitted in federal court.'"); *DiPietro v. Med. Staff at Fulton Cty. Jail*, 805 F. App'x 793, 795 (11th Cir. 2020) (citing *Richardson*, 598 F.3d at 738; *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)) ("[B]ecause fictitious-party pleading generally is not permitted in federal court, the plaintiff must specifically identify the parties he is suing, if not by name then by providing a description of each individual that is sufficiently clear and detailed to permit service of process."). No such circumstances exist here. Therefore, the court **DISMISSES** all claims against fictitious defendants.

2022.  (Doc. 1).[2]

On July 7, 2022, the Board filed a motion to dismiss the First Amended Complaint (Doc. 4), and on July 21, 2022, Patterson filed an answer.  (Doc. 9).  On July 29, 2022, Jane Doe responded to the Board's motion to dismiss and moved for leave to file a Second Amended Complaint.  (Docs. 12, 13).  On August 5, 2022, the Board opposed Jane doe's motion for leave to amend, asserting the amendment would constitute an exercise in futility.  (Doc. 16).

On August 1, 2022, at the court's direction, Jane Doe filed a motion to proceed under a pseudonym.[3]  (Doc. 14).  Patterson opposes Jane Doe's motion (Doc. 17), but the Board takes no position regarding the motion.  (Doc. 18).

This opinion addresses all pending motions.  As discussed below, the proposed Second Amended Complaint does not assert a plausible Equal Protection claim, but it does assert a plausible Due Process claim.  Accordingly, the court will partially grant the Board's motion to dismiss and partially grant Jane Doe's motion for leave to file a Second Amended Complaint.

In addition, as concerns over protecting John Doe's privacy outweigh the

---

[2] Defendants assert federal jurisdiction due to Jane Doe's assertion of a claim pursuant to 42 U.S.C. § 1983 for "Violation of 14th Amendment, Due Process, Equal Protection, 42 U.S.C. § 1983."  (Doc. 1, ¶¶ 3-4; Doc. 1-1, at 28, ¶¶ 56-60).

[3] On July 6, 2022, the court ordered Jane Doe to either file a motion to proceed anonymously, or to amend her Complaint to reflect her actual name.  (Doc. 3).

presumption of openness in judicial proceedings, the court will grant both Jane and John Doe leave to proceed through the remainder of this litigation under a pseudonym.

## CLAIMS IN JANE DOE'S AMENDED COMPLAINT

In her First Amended Complaint, Jane Doe alleges John Doe, her twelve-year-old son, attended school at East Limestone County High School in Limestone County, Alabama. (Doc. 1-1, at 21, ¶ 10). John Doe, a non-verbal child, experiences autism and developmental delays. The school system has provided him an Individualized Education Plan (IEP) "which includes being self-contained in a special education classroom and receiving speech therapy and occupational therapy." (*Id.* at 22, ¶ 13). He has never attacked a teacher or another student. (*Id.* at 21, ¶ 11).

Defendant Robye Patterson served as an Instructional Aide at John Doe's school, but she did not receive any training in restraining special needs students. (*Id.* at 21-22, ¶ 12). In early November 2021, Jane Doe found bruises on John Doe's arms, legs, and buttocks, and she suspected Patterson had abused John Doe. (*Id.* at 22, ¶ 14). On November 15, 2021, Jane Doe met with school administrators, and Principal Louis Berry asked her to keep John Doe home because his teachers needed a break from him. (*Id.* ¶¶ 15-16). On November 23, 2021, Jane Doe received a telephone call from a teacher at the school, who informed her that Patterson abused John Doe and other students. (Doc. 1-1, at 22, ¶ 17).

The Limestone County Department of Human Resources (DHR) and Limestone

County Sheriff's Office (LCSO) investigated the incident. (*Id.* ¶ 18). The Sheriff's investigator informed Jane Doe the investigation revealed "'a number of red flags,' including but not limited to a failure to report incidents to parents, DHR, or LCSO, which led to 'a series of systematic failures' by the Board." (*Id.* ¶ 19). Jane Doe also filed an Alabama Uniform Incident/Offense Report with the Limestone County Sheriff's Office, and on March 4, 2022, the Sheriff arrested Patterson for third-degree assault. (*Id.* ¶¶ 20-21).

Jane Doe asserts Patterson, as an Instructional Aide, acted under the authority of the Board, and she bore responsibility for protecting, supervising, disciplining, and assisting students. (*Id.* at 22-23, ¶ 22). Nonetheless, Patterson "failed to follow John Doe's 'IEP' by abusing him," and she "deliberately harassed and physically abused [John Doe] by purposefully causing bruising on his arms, legs, and buttocks," resulting in John Doe suffering "severe ongoing emotional and mental anguish." (*Id.* at 23, ¶ 23-24). Jane Doe asserts both Patterson and the Board failed to protect John Doe, resulting in violations of "the Board's own policies and procedures regarding supervision of students and protecting students from harassment and assault." (Doc. 1-1, at 23, ¶¶ 25-26). According to Jane Doe, Patterson's assault directly caused John Doe's physical injuries and emotional distress. (*Id.* ¶ 27).

The First Amended Complaint asserts a federal claim against Patterson and the Board, pursuant to 42 U.S.C. § 1983, for violations of John Doe's rights to Due Process

and Equal Protection. (*Id.* at 28, ¶¶ 56-60). It also asserts supplemental state law claims against both Defendants for assault, invasion of privacy, negligence, recklessness/wantonness, battery, and outrage/intentional infliction of emotional distress. (*Id.* at 23-27, ¶¶ 28-50). It asserts a claim against the Board for negligent/wanton hiring, training, supervision, and or retention. (*Id.* at 27-28, ¶¶ 51-55). *See* 28 U.S.C. § 1367(a) ("Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

## TO PROTECT JOHN DOE'S PRIVACY, THE COURT WILL PERMIT BOTH JANE DOE AND JOHN DOE TO PROCEED ANONYMOUSLY

Federal Rule of Civil Procedure 10(a) provides that a "complaint must name all the parties." Based on this rule, "parties to a lawsuit must identify themselves in their respective pleadings." *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992) (*per curiam*). "Yet the rule is not absolute." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (*per curiam*). "A party may proceed anonymously in federal court by establishing 'a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Id.* (quoting *Plaintiff B v.*

*Francis*, 631 F.3d 1310, 1315-16 (11th Cir. 2011)).   However, courts must apply that exception narrowly, and "[p]arties may use 'fictitious name[s]' only in 'exceptional case[s].'"   *Id.* (quoting *Frank*, 951 F.2d at 323) (second and third alterations in original).

The "'first step' in deciding whether privacy trumps publicity" requires application of the following three factors:  "whether the party seeking anonymity (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution. *Id.* (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979);[4] *Francis*, 631 F.3d at 1316).   Other pertinent factors include "whether the party seeking anonymity is a minor or faces a real threat of physical harm absent anonymity," and "whether the party's requested anonymity poses a unique threat of fundamental unfairness to the defendant."  *Id.* (citing *Francis,* 631 F.3d at 1316; *Doe v. Stegall*, 653 F.2d 180, 184 (5th Cir. Unit A Aug. 1981); *S. Methodist Univ. Ass'n of Women Law Students*, 599 F.2d at 713).   However, these factors do not represent an exhaustive list, as the "court 'should carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Id.* (quoting *Francis*, 631 F.3d at 1316) (emphasis in original).   "[A]

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

defendant's general plea for openness is not convincing when stacked against strong evidence supporting a need for anonymity." *Id.* (quoting *Francis*, 631 F.3d at 1318) (internal quotation marks omitted).

Before applying those factors, the court evaluates the precise nature of Jane Doe's request for anonymity. The motion states "Plaintiff" filed it, but it variously refers to "Plaintiff" as Jane Doe and John Doe. (*See* Doc. 14, at 1 ("COMES NOW, Plaintiff Jane Doe, as Mother and Next friend of John Doe, a minor, and hereby moves this Honorable Court . . . ."), ¶ 3 ("Disclosure of *his* identity runs the risk that it would increase the pain and suffering that Plaintiff has already endured and will have to endure for the rest of *his* life.") (emphasis added), ¶ 3 (referring to "Plaintiff's minor status"), ¶ 4 ("Plaintiff is now thirteen (13) years old."), ¶ 4 (discussing potential outcomes "should Plaintiff have to proceed under *her* own name") (emphasis added), ¶ 6 (discussing "Plaintiff's interest in maintaining *his* anonymity") (emphasis added), 3 ("WHEREFORE, the above premises considered, Plaintiff respectfully asks this Court to grant *his* Motion to proceed under a pseudonym.") (emphasis added)). The reply brief does not provide complete clarity, but it suggests the request for anonymity may center on both Jane Doe and John Doe. (Doc. 27, at 1 ("COMES NOW, the Plaintiff and offers the following as *her* Amended Reply . . .") (emphasis added), 1-2 ("The Defendant Patterson now takes issue with a thirteen-year-old autistic child and his mother proceeding anonymously . . . ."), 2 (referring to a request from a "minor,

disabled Plaintiff and his mother" to proceed anonymously), 3-4 (using feminine pronouns to refer to the assault victim), 4-5 (discussing exploited or abused minors revealing their identity), 6 ("The Defendants know the identity of the Plaintiff and will be able to conduct full and complete discovery without needing to publicly disclose *her* identity through the court proceedings.") (emphasis added).

For the sake of completeness, the court will consider whether both Jane Doe and John Doe may proceed under a pseudonym.   Some of the relevant factors apply equivalently to both Jane and John Doe.  As an initial matter, there exists no concern that either Jane Doe or John Doe will risk prosecution by admitting an intent to engage in illegal conduct, and neither has asserted a threat of physical harm absent anonymity.

As Jane Doe alleges claims against a public school board, she challenges governmental activity.  *See D.C. by & through B.C. v. Bibbs*, No. 7:20-CV-01105-LSC, 2021 WL 1910064, at *5 (N.D. Ala. May 12, 2021) ("D.C.'s lawsuit challenges government activity – i.e., the policies and practices of [Sumter County Board of Education (SCBE)] and a former SCBE employee."); *S.W. v. Clayton Cnty. Pub. Sch.*, No. 1:16-CV-0126-TCB, 2016 WL 8943337, at *2 (N.D. Ga. May 9, 2016) ("Plaintiffs are suing a public entity – Clayton County Public Schools – as well as certain school officials in their individual and official capacities[; thus, they] challenge public activities."); *Freedom From Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1357 (S.D. Ga. 2015)  ("First, plaintiffs clearly challenge governmental

activity – [school board's and school officials'] alleged policy of allowing teacher-led prayer in a public school classroom."). Moreover, the Board, the only governmental entity named as a defendant, did not oppose the request for anonymity, and thus, upon cursory analysis this factor presumably weighs in favor of anonymity.

However, a challenge to governmental activity does not automatically weigh in favor of anonymity. *See Frank*, 951 F.2d at 324 (rejecting the proposition that "there is more reason to grant a plaintiff's request for anonymity if the plaintiff is suing the government" and holding "the fact that Doe is suing the Postal Service does not weigh in favor of granting Doe's request for anonymity"). Notably, a suit against the government incites fewer reputational concerns than suits against a private defendant. *Id.* at 323-24 (citing *S. Methodist Univ. Ass'n of Women Law Students,* 599 F.2d at 713) (observing that suits against the government do not implicate the defendant's reputational concerns); *Freedom From Religion Found.*, 109 F. Supp. 3d at 1357 (citing *Frank*, 951 F.2d at 324) ("It is not that suing the government weighs in *favor* of granting a request for anonymity; rather, the operative principle is that a suit against a private party weighs *against* a plaintiff's request for anonymity.") (emphasis in original).

Jane Doe also alleges claims against Patterson in her individual capacity, implicating Patterson's personal reputation and tipping the fairness balance toward disclosure of identity. *See Frank,* 951 F.2d at 324 (quoting *S. Methodist Univ. Ass'n of Women Law Students,* 599 F.2d at 713 ("Basic fairness dictates that those among the

9

defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names.").   Thus, consideration of this element balances fairly equally between the two positions.

Other than the reputational concerns articulated in the previous paragraph, which the court does not diminish, Patterson has not articulated any unique threats of fundamental unfairness if either Jane or John Doe proceeds anonymously.  As Jane Doe points out, Defendants already know her identity and John Doe's, so anonymity will not impair Defendants' ability to prepare their defenses.  (Doc. 14, ¶ 5 (citing *Francis*, 631 F.3d at 1318-19 ("The Defendants are aware of the Plaintiffs' identities and thus are not barred from conducting a full range of discovery in building a defense for trial. Accordingly, we conclude that none of the normal harms threatened to defendants when plaintiffs proceed anonymously are present in this case.")).

The remaining factors – minor status and the potential compelled disclosure of information of the utmost intimacy – bear the most significance, and they warrant distinct discussions for Jane and John Doe.

John Doe's status as a minor – 12 years old at the time of the challenged incident – weighs heavily in favor of allowing him to proceed anonymously.  *Stegall*, 653 F.2d at 186 ("[W]e view the youth of these plaintiffs as a significant factor in the matrix of considerations arguing for anonymity here."); *S.W.*, 2016 WL 8943337, at *2 ("Courts have routinely afforded particular care to the privacy interest of minors.").  Indeed, the

Federal Rules of Civil Procedure explicitly direct that any filings containing the name of a known minor may include only the minor's initials. Fed. R. Civ. P. 5.2(a)(3); *see also C.H. v. Sch. Bd. of Okaloosa Cnty., Fla.*, No. 3:18-CV-2128-MCR-CJK, 2018 WL 11267720, at *1 n.1 (N.D. Fla. Dec. 7, 2018) ("The Court does not question the propriety of concealing C.H.'s identity, as Fed. R. Civ. P. 5.2(a)(3) permits a party to use a minor's initials in court filings."). Some courts also express particular concern over a minor's privacy interests when the minor suffers a learning or other disability. *Doe by & through Doe v. Costa Cruise Lines N.V.*, No. 06-60201-CIV, 2006 WL 8432474, at *4 (S.D. Fla. May 26, 2006) ("[T]he Court concludes that a minor who alleges a sexual assault should be allowed to proceed anonymously to protect the minor from further embarrassment or social stigma, *particularly when the minor involved is a learning disabled child.*") (emphasis added).

Moreover, the litigation will almost certainly compel him to reveal intimate information. Jane Doe asserts Patterson's alleged assault scarred John Doe physically, emotionally, and psychologically. She claims proceeding privately will lessen the emotional impact of the litigation upon John Doe, whereas disclosing his identity will increase his pain and suffering. After the incident underlying this lawsuit, John Doe transferred to another school, and his mother asserts public knowledge of the incident could affect his relationships with teachers and friends in the new school.

The Eleventh Circuit maintains that "'personal embarrassment' alone does not

justify proceeding under a pseudonym." *Doe v. Neverson*, 820 F. App'x 984, 987 (11th Cir. 2020) (citing *Doe v. Sheely*, 781 F. App'x 972, 974 (11th Cir. 2019), *Francis*, 631 F.3d at 1316). Yet the articulated concerns transcend mere embarrassment, as they invoke potential emotional, psychological, and developmental harm. *See A.D. v. Cavalier Mergersub LP*, No. 2:22-CV-095-JES-NPM, 2022 WL 4354842, at *3 (M.D. Fla. Sept. 20, 2022) (citing *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19CV120, 2020 WL 5269758, at *2 (E.D. Va. Mar. 20, 2020), *order clarified*, No. 4:19CV120, 2020 WL 8639343 (E.D. Va. July 30, 2020)) (considering that "'mental and emotional harm may also befall Plaintiff if she is forced to proceed publicly'"); *Neverson*, 820 F. App'x at 988 (recognizing concerns over "social stigma" sometimes warrant proceeding anonymously).

For similar reasons, most courts allow minor plaintiffs to proceed anonymously in cases alleging sexual abuse or assault. *See Francis*, 631 F.3d at 1317 ("The issues involved in this case could not be of a more sensitive and highly personal nature – they involve description of the Plaintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors who were coerced by the Defendants into those activities."); *S.W.*, 2016 WL 8943337, at *2 ("Plaintiff alleges that she was sexually assaulted, and cases involving allegations of sexual conduct often implicate sensitive and highly personal information."). To be clear, Jane Doe alleges only physical and emotional abuse, not sexual abuse. But significant concerns nonetheless manifest in

protecting an autistic 12-year-old victim of physical and emotional abuse from further trauma related to the abuse.  *See D.C.,* 2021 WL 1910064, at *4-5 (granting leave to proceed anonymously to a fifth-grade student asserting claims for a teacher's physical and emotional abuse).  Moreover, Jane Doe alleges that John Doe suffered bruising on his buttocks, a private body part, elevating the privacy concern beyond other instances of physical abuse.  Indeed, Patterson did not cite, and the court's research did not reveal, any case requiring a minor victim of physical and emotional assault at the hands of a school employee to reveal his or her identity.

The court concludes all these circumstances described above weigh in favor of protecting John Doe's identity, rather than upholding the traditional practice of disclosing all parties' identities in civil proceedings.

Whether Jane Doe's identity should remain confidential requires a separate analysis.  As Jane Doe is not a minor, special concerns over protecting the identity of younger, more vulnerable litigants do not weigh in her favor.  She also has not articulated any concerns over disclosing intimate information personal to her, outside of facts regarding her son's abuse.

However, the court concludes Patterson's interest in public disclosure of Jane Doe's identity must yield to concerns over preserving John Doe's privacy.  In *D.L. ex rel. Phan L. v. Bateman*, No. 3:12-CV-208-J-32JBT, 2012 WL 1565419 (M.D. Fla. May 2, 2012), a Florida state inmate and her two minor children, who proceeded through their

father as next friend, sued the Secretary of the Florida Department of Corrections and the Warden of the facility which housed the mother, in their respective official capacities, for constitutional violations arising from prohibiting visitation between the mother and children.  The court granted leave for the children to proceed anonymously, as the case involved government defendants, private familial interests, and assessments of the children's mental health.  *Id.* at *1-2.  The court concluded the "same considerations also support allowing [the parents] to proceed anonymously, because public disclosure of their identities would nullify any privacy protection given to their children alone."  *Id.* at *2 (citing *Doe v. Banos,* 713 F. Supp. 2d 404, 407 n. 1 (D. N.J. 2010) (allowing the father to proceed anonymously to protect the identity of his minor daughter)); *see also D.C.*, 2021 WL 1910064, at *4-5 (in a case involving claims of physical and emotional abuse of a student by a school employee, allowing both the student and the parent through whom the student filed suit to proceed anonymously to protect the student's identity); *GEICO Gen. Ins. Co. v. M.O.*, No. 21-2164-DDC-ADM, 2021 WL 4476783, at *7 (D. Kan. Sept. 30, 2021) (citations omitted) ("[C]ourts typically afford heightened protection to parents prosecuting claims on behalf of minor children who were allegedly subjected to sexual misconduct or harassment. . . .  In those cases, allowing the adult parent to proceed anonymously amounts to a recognition that ordering disclosure of the parent's identity could result in the identification of the minor child."); *J.W. v. D.C.*, 318 F.R.D. 196, 199 (D. D.C. 2016) (quoting *P.M. v. Evans-Brant*

14

*Cent. Sch. Dist.*, No. 09-CV-686S, 2012 WL 42248, at *3 (W.D. N.Y. Jan. 9, 2012)) ("In the Court's view, . . . J.W. and his parents' privacy interests are intractably intertwined. As other courts have recognized . . . a parent's identity, 'if disclosed, could jeopardize the child's confidentiality."").[5]  This court echoes the concerns that disclosing Jane Doe's name will effectively reveal John Doe's identity.

Patterson contends fairness requires Jane Doe to publicly disclose her identity because she has subjected the underlying incident to public scrutiny through the filing of a public criminal complaint and her attorney's comments to the press about this civil action.  (Doc. 17, at 2).  She asserts:

> Parents of current students, the Defendant's friends and the public in general will form or change opinions based on the allegations in this lawsuit, the facts proved, and the conclusions ultimately drawn.  It would be unfairly prejudicial to the Defendants and potentially irreparably detrimental to their reputations for those opinions to be based on anything less than the whole truth, including the identity and veracity of the Defendants' accusers.

(Doc. 17, at 7-8).[6]

---

[5] The court recognizes the district court in *C.H. v. Sch. Bd. of Okaloosa Cnty., Fla.*, No. 3:18-CV-2128-MCR-CJK, 2018 WL 11267720 (N.D. Fla. Dec. 7, 2018), reached a different conclusion, requiring parents of a student who alleged physical and emotional abuse to disclose their identities while permitting the student to proceed anonymously. *Id.* at *1-2.  However, in that case the parents argued only that "anonymity is necessary because public disclosure will cause them and C.H. to become targets of 'harassment, intimidation, and other reprisals in the county in which they reside,'" and the court denied them anonymity because it found no evidence of any such circumstances. *Id.* at *2. Because the *C.H.* court restricted its analysis to the arguments raised, and it did not address the potential collateral effect on the child of disclosing the parents' identity, this court does not find the opinion persuasive on this point.

[6] The court notes that, despite using the plural "Defendants," Patterson asserts these arguments only

Like every litigant subjected to potential civil and criminal liability, especially in a case involving sensitive allegations with the potential to damage reputations, Patterson bears an interest in the public knowing all the facts, including the identity of the individuals asserting claims against her.  *See Freedom From Religion Found.*, 109 F. Supp. 3d at 1357 n.3 ("Plaintiffs' assertion that their '*primary* challenge is to government officers acting in their official capacities' . . . offers little comfort to the individual defendants who are on the hook for money damages if plaintiffs prevail.").  However, Patterson cited no authority – and the court has found none – advancing the argument that the pursuit of criminal charges for the same conduct underlying a civil lawsuit obviates the civil plaintiff's need for anonymity.  Moreover, other courts have rejected similar entreaties contending that a parent's public discussion of underlying incidents prevents the minor and parent from proceeding anonymously.  *See Doe v. Mechanicsburg Sch. Bd. of Educ.*, 518 F. Supp. 3d 1024, 1027-28 (S.D. Ohio 2021) (rejecting argument that parents' choice to discuss the incident underlying the lawsuit on a text message thread diminished the minor's privacy interests); *R.N. by & through R.T. v. Franklin Cmty. Sch. Corp.*, No. 119CV01922MJDTWP, 2019 WL 4305748, at *3 (S.D. Ind. Sept. 11, 2019) (rejecting argument that "Plaintiffs' request to proceed anonymously in this case should be denied, because Plaintiffs and their counsel 'appeared on local television news

---

on her own behalf, as the Board did not take a position regarding the motion to proceed anonymously. (Doc. 18).

stations, reporting and discussing Plaintiff R.N.'s bullying allegations and revealing their identities'").  Jane Doe asserts she did not reveal her or John Doe's identity during any public discussion, and Patterson has not refuted that assertion.  Therefore, these concerns do not outweigh the need to protect John Doe's privacy by also protecting his mother's privacy.

For these reasons, the court concludes all the circumstances, and particularly the concern that revealing Jane Doe's identity will also publicly identify John Doe, weigh in favor of permitting Jane Doe to proceed anonymously.  Therefore, the court will grant leave to proceed under a pseudonym as to both Jane Doe and John Doe.

## THE COURT WILL PARTIALLY GRANT THE BOARD'S MOTION TO DISMISS AND JANE DOE'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

The Board asks the court to dismiss the claims Jane Doe asserted against it in the Amended Complaint.  Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim upon which relief may be granted.  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss.  First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue.  *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity.  *Id.* at 679.  Well-pleaded factual allegations do not encompass mere "labels and

17

conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678. Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability." *Id.* at 678, 679 (citations omitted).

In response to the motion to dismiss, Jane Doe requests leave to file a Second Amended Complaint. Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings. Absent circumstances not relevant here,[7] a party may amend

---

[7] A party may amend its pleading once as a matter of course within 21 days after serving it, or within 21 days after an opposing party serves a required responsive pleading or motion. Fed. R. Civ. P. 15(a)(2). Plaintiff already amended the Complaint once.

the pleadings only by leave of the court or the adverse party's written consent. *See* Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires." *Id.* Unless a substantial reason exists to deny leave to amend, "the discretion of the District Court is not broad enough to permit denial." *Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006) (internal quotations omitted).

The Board opposes Jane Doe's motion, asserting the amendment would constitute an exercise in futility.  "[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).  Futility ensues "when the complaint as amended is still subject to dismissal." *Id.* at 1263 (citing *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999) (citation omitted).

As discussed, the Amended Complaint asserts a § 1983 claim against both Patterson and the Board for violations of John Doe's rights to Due Process and Equal Protection; state law claims against both Defendants for assault, invasion of privacy, negligence, recklessness/wantonness, battery, outrage/intentional infliction of emotional distress; and a state law claim solely against the Board for negligent/wanton hiring, training, supervision, and/or retention.  (Doc. 1-1, at 23-28, ¶¶ 28-55).  The Board asks the court to dismiss the federal claim because the alleged facts do not support a viable Due Process or Equal Protection violation, and because the Amended

19

Complaint does not allege a policy or custom resulting in a deprivation of federal rights, thereby triggering the Board's liability. The Board asks the court to dismiss the state law claims because the Alabama Constitution provides the Board with absolute immunity.

The proposed Second Amended Complaint purports to correct the alleged deficiencies by adding the following factual allegations: (1) the Board did not provide Patterson any restraint training for assisting with special needs students (Doc. 13-1, ¶ 14); (2) the school previously investigated Patterson for abuse but did not report the investigation to parents or DHR (*Id.* ¶ 22); (3) "The Board had a policy and practice of not reporting allegations of child abuse to the proper authorities or to parents[,] allowing the abuse of John Doe to continue" (*Id.* ¶ 23); (4) Patterson's abuse constituted "excessive physical punishment of a child in her care and custody" (*Id.* ¶ 29); and (5) "The Board implemented various policies such as not providing training for teacher's aids, including Patterson, in how to handle disabled children like John Doe, and investigating complaints of child abuse by its employees without reporting the allegations to proper authorities or parents," directly resulting in a violation of John Doe's constitutional rights. (*Id.* ¶ 30). The proposed Second Amended Complaint also removes all state law claims against the Board, eliminating the negligent/wanton hiring, training, supervision, and retention claim altogether, and asserting the assault, invasion of privacy, negligence, recklessness/wantonness, battery, and outrage/intentional

infliction of emotional distress claims only against Patterson.[8]  However, the proposed Second Amended Complaint reiterates the § 1983 claim against both Patterson and the Board. (*Id.* ¶¶ 56-61).

Accordingly, Jane Doe correctly asserts that the proposed Second Amended Complaint cures *some* of the deficiencies the Board alleged in its motion to dismiss.  As Jane Doe eliminated all of her state law claims against the Board, the court need not assess whether sovereign immunity precludes those claims.  Whether the proposed Second Amended Complaint presents a viable § 1983 claim requires further discussion.

## I.    The Court Will Dismiss the Equal Protection Claim as the Proposed Second Amended Complaint Does Not Plausibly Assert Other Individuals Received More Favorable Treatment

The court cannot discern a viable Equal Protection claim in the proposed Second Amended Complaint.  The Equal Protection Clause provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  Regardless whether Jane Doe pursues a class-based discrimination claim or a "class of one" theory of Equal

---

[8] The heading for each state law claim in the proposed Second Amended Complaint states Plaintiff asserts the claim "[a]s to Defendant Patterson." (Doc. 13-1, at 7-11).  However, in the demand for relief for each state law claim, Plaintiff requests relief from "Defendants." (*Id.* at 7-12).  The court concludes the use of the plural term "Defendants" constitutes a typographical error, as Plaintiff clearly specifies in the heading of each state law claim that she intends to assert the claim against Patterson only.  Moreover, in her response to the Board's motion to dismiss, Plaintiff states that the proposed Second Amended Complaint "removes some of the claims against Limestone County Board of Education that are addressed in the Motion to Dismiss." (Doc. 12, at 2).  The court will order Plaintiff to correct this discrepancy.

Protection, she must allege that John Doe received less favorable treatment than other similarly situated persons.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 563-65 (2000)) (A "'class of one' claim involves a plaintiff who 'alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"); *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006) (citations omitted) (An Equal Protection plaintiff must establish "that (1) he is similarly situated to other [individuals] who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis."); *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1045 (11th Cir. 2008) (citing *Griffin Indus.*, 496 F.3d at 1204-05) ("[A] plaintiff must satisfy the 'similarly situated' prong of this test, whether or not its discrimination claim is based on a suspect classification.").

Jane Doe alleged only that John Doe suffered abuse, harassment, and intimidation at the hands of Patterson; she did not assert that any other individual or class of individuals received more favorable treatment, and she did not attempt to demonstrate John Doe was similarly situated to other individuals.  Those failures prove fatal to her Equal Protection claim, as courts must "apply the similarly situated requirement 'with rigor.'" *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, - F.4th - , No. 21-10619, 2022 WL 4100687, at *7 (11th Cir. Sept. 8, 2022) (quoting

*Griffin Indus.*, 496 F.3d at 1207); *see also Griffin Indus.*, 496 F.3d at 1205 (citation omitted) ("A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another.").

For these reasons, Jane Doe's Equal Protection claim cannot proceed against either Patterson or the Board.  Therefore, even though Patterson did not move to dismiss the Equal Protection claim, the court will dismiss the claim against her as well.

## II.  Jane Doe May Retain the Substantive Due Process Claims as the Proposed Second Amended Complaint Asserts Plausible Claims for Violation of John Doe's Right to Bodily Integrity

The Proposed Second Amended Complaint alleges Patterson, "acting under color of state law and using her authority as an Instructional Aide, assaulted [John Doe] in violation of his constitutional right to bodily integrity" while "he was under the authority and control of Defendant Patterson."   (Doc. 13-1, ¶¶ 57, 59).   Those allegations evoke principles of substantive due process.  *See Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have . . . been accorded to . . . the right to bodily integrity."); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right[] . . . to bodily integrity . . . .").

As substantive due process constitutes "a legal concept 'untethered from the text of the Constitution,'" the Supreme Court and other federal courts have expressed

23

reluctance to expand its scope. *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1329 (11th Cir. 2020) (citing *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019)). As not every injury invokes constitutional protection, courts must not treat the Fourteenth Amendment as "a 'font of tort law' that can support novel federal causes of action." *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000); *Goodman v. Kimbrough*, 718 F.3d 1325, 1333 (11th Cir. 2013)). Rather, the

> right to substantive due process depends on the relationship of the official and the individual his acts or omissions allegedly harmed. An official has a "duty to protect individuals from harm by third parties" only when the individuals are in the official's custody. *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999). And individuals who are not in an official's custody must allege that his conduct was "arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 1258 (quoting *Collins*[*v. City of Harker Heights*], 503 U.S. [115,] 128[ (1992)]).
>
>        . . . .
>
>        It is well-established that "schoolchildren are not in a custodial relationship with the state." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1378 (11th Cir. 2002). A custodial relationship exists only if the government places "limitations . . . upon an individual's ability to act on his own behalf" that are similar in kind to incarceration or other forms of involuntary confinement. *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 569-70 (11th Cir. 1997). School attendance, even when compelled by truancy and compulsory attendance laws, is not similar in kind to incarceration or institutional confinement. *Id.* at 569; *D.R. ex rel. L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1370-72 (3d Cir. 1992) (*en banc*). Ordinarily there are no custodial relationships in the public-school system, even if officials are aware of potential dangers or have expressed an intent to provide aid on school grounds. *Wyke*, 129 F.3d at 569-70.

*L.S.*, 982 F.3d at 1329.

In the public school setting, the Eleventh Circuit has recognized "arbitrary" or "conscience shocking" behavior sufficient to support a substantive due process claim only when the plaintiff alleges "intentional, obviously excessive corporal punishment." *Id.* at 1331 (citing *Nix*, 311 F.3d at 1378; *Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903, 904-05 (11ᵗʰ Cir. 2003); *Neal*, 229 F.3d at 1076); *see also Neal*, 229 F.3d at 1075 ("[E]xcessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment . . . , may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior.").[9]

The court must first assess whether Jane Doe alleges acts of corporal punishment. *Hines v. Jefferson*, 795 F. App'x 707, 715 (11ᵗʰ Cir. 2019) (citing *Neal*, 229

---

[9] In *Ingraham v Wright*, 430 U.S. 651 (1977), the Supreme Court held "that when public school teachers or administrators impose disciplinary corporal punishment, the Eighth Amendment is inapplicable" and "the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment in the public schools." *Id.* at 671, 682. In essence, the Court rejected both an Eighth Amendment and a Fourteenth Amendment procedural due process challenge to the use of corporal punishment as a disciplinary measure in public schools. *See* 1 Ronna Greff Schneider, Education Law § 3:7 (October 2019 Update). The Court, however, left open any argument that the infliction of corporal punishment violated the substantive due process rights of students. *See Ingraham*, 430 U.S. at 659 n.12 ("We denied review of a third question presented in the petition for certiorari: 'Is the infliction of severe corporal punishment upon public school students arbitrary, capricious and unrelated to achieving any legitimate educational purpose and therefore violative of the Due Process Clause of the Fourteenth Amendment?' Pet. for Cert. 2."); *id.* at 679 n.47 ("We have no occasion in this case … to decide whether and under what circumstances corporal punishment of a public school child may give rise to an independent federal cause of action to vindicate substantive rights under the Due Process Clause."); Schneider, *supra*.

25

F.3d at 1072) ("The first step in this inquiry is to determine whether the defendant's conduct constitutes corporal punishment.").  The Eleventh Circuit has yet to precisely define "corporal punishment."  *Neal*, 229 F.3d at 1072.  "Many corporal punishment cases involve what might be called traditional applications of physical force, such as where school officials, subject to an official policy or in a more formal disciplinary setting, mete out spankings or paddlings to a disruptive student," yet "[n]ot all corporal punishment cases arise under those circumstances, . . . and [some] may involve less traditional, more informally-administered, and more severe punishments."  *Id.* (citations omitted).  "The key inquiry is not what form the use of force takes but whether the use of force is 'related to [the student's] misconduct at school and . . . for the purpose of discipline.'"  *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 598-99 (11th Cir. 2010) (alteration in original) (quoting *Neal*, 229 F.3d at 1073).

Jane Doe alleges Patterson inflicted injuries on John Doe for the purpose of discipline.  (Doc. 13-1, ¶ 29) ("Patterson's abuse was a form of excessive physical punishment of a child in her care and custody in violation of John Doe's Constitution [*sic*].").  Therefore, the court deems her alleged actions as constituting "corporal punishment" for purposes of the substantive due process analysis.

To state an excessive corporal punishment claim, "[a] plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a

reasonably foreseeable risk of serious bodily injury." *Neal*, 229 F.3d at 1075 (footnote omitted). The claim has "an objective and a subjective component, both of which must be met before the school official may be subject to liability." *Id.* at 1075 n.3. "The evidence must support a reasonable inference that the punishment is 'obviously excessive' as an objective matter and that [the school official] 'subjectively intend[ed] to use that obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result.'" *T.W.*, 610 F.3d at 599 (second alteration in original) (quoting *Neal*, 229 F.3d at 1075 n.3).

"To determine whether a use of force is 'obviously excessive, [courts must] consider the totality of the circumstances.'" *Id.* (quoting *Neal*, 229 F.3d at 1075). "Three factors are particularly relevant: '(1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted.'" *Id.* (quoting *Neal*, 229 F.3d at 1075). In addition, because courts "consider the totality of the circumstances, [they] must also take into account [a student's] disability." *Id.*; *see also Hatfield v. O'Neill*, 534 F. App'x 838, 845 (11th Cir. 2013) ("Because we consider the totality of the circumstances, we take into account T.H.'s disability. And because T.H.'s disability is profound, rendering her completely vulnerable and defenseless, this factor is of particular significance in this case.").

The proposed Second Amended Complaint addresses some of these factors but not others.  First, as to the subjective component of the excessive corporal punishment claim,

> [t]he Eleventh Circuit has instructed district courts assessing the intent prong of substantive due process claims to consider whether a defendant's conduct creates an inference of malice. *Hatfield*, 534 Fed. Appx. at 847. For example, if a teacher makes derogatory comments during the alleged abuse, that tends to weigh in favor of finding malice. *Id.* (concluding a teacher's actions were inspired by malice because she struck a disabled student while calling him "fat-ass," "tons of fun," and "retard" and exclaimed the student was "sucking up the oxygen").  In addition, if the school employee's acts are part of a pattern of abusive conduct, this too suggests the presence of malice. *M.S.*[ *ex rel. Soltys v. Seminole Cnty. Sch. Bd.*], 636 F. Supp. 2d [1317,] 1325[ (M.D. Fla. 2009)]; see also *Kirkland*, 347 F.3d at 904 (explaining that a principal's conduct was intentional as he repeatedly struck a student, who was not acting in any threatening manner, with a metal cane).  Finally, if the school employee's actions present a "foreseeable risk of serious bodily injury," this too suggests that the employee acted maliciously. See *Kirkland*, 347 F.3d at 904 (holding that a principal acted with intent as he repeatedly struck a student in the head with a metal cane, presenting a reasonably foreseeable risk of bodily injury).

*D.D.T. by & through S.C. v. Rockdale Cnty. Pub. Sch.*, 580 F. Supp. 3d 1314, 1333-34 (N.D. Ga. 2021).

Jane Doe has not alleged Patterson uttered any derogatory comments during the alleged abuse, but she does allege Patterson acted deliberately, "harassed" John Doe, and engaged in a pattern of abusive conduct toward John Doe and other students. (Doc. 13-1, ¶¶ 19 ("Jane Doe received a phone call from a teacher who informed Jane Doe that Patterson was abusing children at School, including her son, John Doe."), 28

28

("Patterson deliberately harassed and physically abused [John Doe] . . . .")). Accordingly, the court finds Jane Doe has satisfied her pleading obligation as to the subjective component.

As to the objective component, the Second Amended Complaint does not address any demonstrated need for corporal punishment or, concomitantly, the relationship between the need and amount of force administered. However, in a case involving a non-verbal autistic student, those factors should weigh less significantly at the pleading stage, as the student may not possess the ability to articulate the circumstances leading to the abuse, necessitating discovery to elucidate that context. *See Hatfield*, 534 F. App'x at 845 (advising that courts should consider a student's disability); *D.D.T.*, 580 F. Supp. 3d at 1332 (considering that the minor plaintiff was "a non-verbal, autistic student who could not report his abuse to his parents"); *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 980 (N.D. Fla. 2019) (weighing student's severe disability when considering whether the corporal punishment served a legitimate pedagogical purpose).

Regarding the extent of the injury alleged, pursuant to precedent John Doe's bruises, standing alone, likely would not support a finding of objectively excessive corporal punishment. The Eleventh Circuit typically requires more serious injuries to support a constitutional claim. *Compare Neal,* 229 F.3d at 1076 ("The injury alleged by Plaintiff here – the utter destruction of an eye – clearly was serious."), *and Kirkland*, 347

29

F.3d at 904 (student who suffered a large knot on his head and continued migraine headaches after school official struck him with a metal cane in the head, ribs and back experienced sufficiently serious injuries), *with T.W.,* 610 F.3d at 601 (characterizing bruises and transient pain as "only minor physical injuries"), *and Peterson v. Baker*, 504 F.3d 1331, 1337 (11th Cir. 2007) ("[T]he extent of the student's bodily injury was not serious" when he suffered slight bruising, red marks on his neck, and temporary loss of breath).

However, the court must also consider the emotional harm John Doe allegedly suffered as a result of Patterson's actions.  *See T.W.,* 610 F.3d at 601 (recognizing that developmentally disabled students "are particularly vulnerable to psychological harm," and their psychological injuries "can be as traumatic, if not more traumatic, than physical injuries").  The proposed Second Amended Complaint asserts that Patterson's abuse caused John Doe "severe ongoing emotional and mental anguish." (Doc. 13-1, ¶ 28; *see also id.* ¶ 59 (alleging John Doe "has been caused to suffer physical injury, severe emotional distress, anguish, embarrassment, humiliation, anxiety, frustration, stress, trauma and concern")).  Other district courts within this Circuit have allowed excessive corporal punishment cases to proceed to discovery based upon similar allegations.  *See D.D.T.*, 580 F. Supp. 3d at 1333 (At motion to dismiss stage, the totality of the circumstances supported a finding of objectively serious injuries even though the plaintiff did not allege "that he suffered an immediate serious bodily injury," as he

alleged the abuse caused acute anxiety and weight loss.); *N.R.,* 418 F. Supp. 3d at 979-80 (At motion to dismiss stage, a "profoundly disabled and vulnerable child victim" alleged sufficiently serious injuries when he suffered both physical injuries and post-traumatic stress disorder."); *B.M. ex rel. M.F. v. Thompson*, No. 3:13-CV-13-J-12JBT, 2013 WL 4547344, at *5 (M.D. Fla. Aug. 27, 2013) (At motion to dismiss stage, student alleged sufficiently serious injury when he reported a severe immediate psychological reaction to the event and subsequent symptoms of post-traumatic stress disorder.); *but c.f. Harris by & through Davis v. Autry*, No. 20-13480, 2022 WL 392169, at *8 (11th Cir. Feb. 9, 2022) (recognizing the need to consider a student's psychological injuries but, *at summary judgment stage*, nonetheless finding that the student's diagnosis of posttraumatic stress disorder did not support a violation of substantive due process based upon the totality of the circumstances). This court similarly affords significant weight to the allegation of psychological injuries to a non-verbal, autistic student.

For the reasons discussed, the court finds the totality of the allegations of the proposed Second Amended Complaint – and particularly the allegations of Patterson's deliberate, repeated abuse and John Doe's resulting physical and psychological injuries – state a sufficient claim for excessive corporal punishment in violation of John Doe's substantive due process rights.

In its original motion to dismiss, the Board argued Jane Doe had not pleaded sufficient facts to hold the Board liable for Patterson's actions, as she did not allege

John Doe's alleged injuries arose from a policy or custom of the Board.  (Doc. 4, at 18).[10]  However, the Board did not rely upon that contention in its opposition to Jane Doe's motion for leave to amend.  The Board acknowledged the proposed Second Amended Complaint set forth additional facts to address its policy and custom arguments, yet it argued only that those additional facts did not affect the viability of the Second Amended Complaint, as that pleading contained no viable constitutional claims against Patterson for which the Board could bear liability.  (Doc. 16, at 5 ("The additional facts set forth by the proposed Second Amended Complaint only address the third argument of the Board concerning Board liability.  However, this third argument is only relevant if the Plaintiff stated a plausible due process or equal protection claim. Plaintiff did not.")).

As the Board does not presently challenge the sufficiency of the proposed Second Amended Complaint vis-a-vis *Monell* liability, and that pleading sets forth facts

---

[10] As a municipal entity, the Board

> may not be held liable for constitutional deprivations on the theory of *respondeat superior. Denno v. Sch. Bd. of Volusia Cty., Fla.,* 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, "municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-80, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986).  A municipality therefore may be held liable "only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno,* 218 F.3d at 1276.

*Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015); *see also Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 694-95 (1978).

plausibly demonstrating John Doe's injuries resulted from a policy or custom of the Board,[11] allowing the amendment to assert the Board's constitutional liability would not constitute an exercise in futility. *See Fischer v. Trivita Inc.*, No. 619CV2333ORL41EJK, 2020 WL 13349091, at *2 (M.D. Fla. July 30, 2020) (citations and quotation marks omitted) ("The nonmovant bears the burden of showing prejudice, bad faith and futility of the amendment."); *Boykin v. Home Choice of Alabama, Inc.*, No. CV 18-0281-WS-MU, 2019 WL 2571249, at *2 (S.D. Ala. June 20, 2019) ("As the party opposing the amendment, Boykin bears the burden of establishing that the proposed

---

[11] The proposed Second Amended Complaint alleges the Board failed to provide Patterson with any training on how to restrain special needs students, and it had a policy of failing to train teacher's aides on that necessary skill. (Doc. 13-1, ¶¶ 14, 30). That pleading further alleges:

> 21.　Investigator Kristin King, with the Limestone County Sheriff's Office, told Jane Doe they had found "a number of red flags," including, but not limited to a failure to report incidents to parents, DHR, or LCSO, which led to "a series of systematic failures" by the Board.

> 22.　Investigator King told John Doe's mother that the school had previously investigated Ms. Patterson for abuse but did nothing to report the investigation to DHR or the parents, including the parent of John Doe.

> 23.　The Board had a policy and practice of not reporting allegations of child abuse to the proper authorities or to parents allowing the abuse of John Doe to continue.

(*Id.* ¶¶ 21-23). It also asserts "Patterson's failure to protect John Doe violated the Board's own policies and procedures regarding supervision of students and protecting students from harassment and assault." (*Id.* ¶ 31). Plaintiff further claims "[t]he policies put in place by the Defendant Board directly resulted in the harassment and abuse of [John Doe.]." (*Id.* ¶ 58; *see also id.* ¶ 30 ("The Board implemented various policies such as not providing training for teacher's aids, including Patterson, in how to handle disabled children like John Doe, and investigating complaints of child abuse by its employees without reporting the allegations to proper authorities or parents that directly resulted in the violation of John Doe's rights under the U.S. Constitution.")).

amendment would be futile."); *Brown v. U.S. Bank, N.A.*, No. 3:17-CV-44-TCB, 2018 WL 1229998, at \*2 (N.D. Ga. Feb. 13, 2018) (citation omitted) ("The party opposing amendment bears the burden of proving futility."); 6 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1473 (3d ed. 2022) (court should deny leave to amend "if other parties to the action can show that . . . the proposed amendment is totally frivolous").

In summary, the proposed Second Amended Complaint asserts a viable substantive due process claim against both Patterson and the Board for violations of John Doe's right to bodily integrity.

## CONCLUSION AND ORDERS

For the reasons stated herein, the court **PARTIALLY GRANTS** the Board's motion to dismiss and Jane Doe's motion for leave to file a Second Amended Complaint. The court **DISMISSES** Plaintiff's Equal Protection claim against both Defendants, and any claims against fictitious defendants.[12] The court **ORDERS** Jane doe to file a Second Amended Complaint within seven (7) days of the date of this order. In addition to omitting the Equal Protection claim, Jane Doe should correct the demand for relief for each of her state law claims to reflect that she asserts each claim against

---

[12] *See supra,* note 2.

Patterson only.[13]  For complete clarity, Jane Doe may assert her state law claims against Patterson only, and she may assert a claim for substantive due process violations against both Patterson and the Board.

The court **GRANTS** Jane Doe's motion to proceed under a pseudonym as to both herself and John Doe.

**DONE** and **ORDERED** this 25th day of October, 2022.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[13] *See supra*, note 8.